UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LILLIAN IVETTER CANDELARIA o/b/o
J.L.G.L.,

    Plaintiff,

  v.

ANDREW SAUL, Commissioner of Social
Security,

    Defendant.

18-CV-557

Decision and Order

---

On May 16, 2018, the plaintiff, Lillian Candelaria, brought this action under the Social Security Act ("the Act") on behalf of the claimant, J.L.G.L., a minor child under 18 years of age. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that J.L.G.L. was not disabled. Docket Item 1. On January 25, 2019, Candelaria moved for judgment on the pleadings, Docket Item 11; on May 29, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 19; and on June 19, 2019, Candelaria replied, Docket Item 20.

For the reasons stated below, this Court grants Candelaria's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

**I. PROCEDURAL HISTORY**

On February 24, 2015, Candelaria applied for Children's Supplemental Security Income benefits on behalf of J.L.G.L. Docket Item 8 at 21. She claimed that J.L.G.L. had been disabled since April 1, 2014, due to a learning disability. *Id.* at 8, 361.

On June 3, 2015, Candelaria received notice that her application was denied because J.L.G.L. was not disabled under the Act. *Id.* at 8. She requested a hearing before an administrative law judge ("ALJ"), which was scheduled for June 23, 2017, but adjourned so Candelaria could obtain representation. *Id.* at 207. A second hearing, at which her counsel appeared, was held on August 25, 2017. *Id.* at 216. The ALJ then issued a decision on October 4, 2017, confirming the finding that J.L.G.L. was not disabled. *Id.* at 34. Candelaria appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 6.

**A. CHILDREN'S DISABILITY STANDARD**

A child under 18 is disabled under section 1614(a)(3)(C)(i) of the Social Security Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." In denying Candelaria's application, the ALJ evaluated her claim under the Social Security Administration's three-step evaluation process to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a).

At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity ("SGA"), not surprisingly defined as work activity

that is both substantial and gainful. *Id.* § 416.972. "Substantial work activity" involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful work activity" is work usually done for pay or profit, whether or not profit is realized. *Id.* § 416.972(b). If the claimant is engaged in SGA, the claimant is not disabled regardless of medical condition, age, education, or work experience. *Id.* at § 416.924(b). If the claimant is not engaged in SGA, the ALJ proceeds to the next step. *Id.*

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." *Id.* at § 416.924(a). For a claimant under the age of 18, an impairment is not severe if it is a slight abnormality or a combination of such abnormalities that causes no more than minimal functional limitations. *Id.* § 416.924(c). If the claimant has a severe impairment, the ALJ proceeds to the third step. *Id.* § 416.924(a).

At step three, the ALJ must determine whether the impairment or combination of impairments meet, medically equal, or functionally equal an impairment in the listings. *Id.* § 416.924(d). If the claimant has an impairment or combination of impairments that meet, medically equal, or functionally equal the severity of one in the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the claimant is disabled. *Id.* § 416.924(d). If not, then the claimant is not disabled. *Id.*

To determine whether impairments functionally equal one in the listings, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and

physical well-being.  *Id.* § 416.926a(b)(1).  That assessment compares how the child performs in each of these domains with the typical functioning of a child of the same age without impairment.  *Id.* § 416.926a(b).  The child's impairment is of listing-level severity if there are "marked" limitations in at least two domains or an "extreme" limitation in one domain.  *Id.* § 416.926a(d).  In determining whether impairments are "marked" or "extreme," the ALJ considers functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects.  *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(2)(i).  A "marked" limitation is "more than moderate" but "less than extreme."  *Id.*  On a standardized test designed to measure abilities within a certain domain, a "marked limitation" means a score of at least two, but less than three, standard deviations below the mean and a level of day-to-day functioning consistent with that score.  *Id.* § 416.926a(e)(2)(i), § 416.926a(e)(2)(iii).  For example, in the domain of "health and well-being," a child is considered to have a "marked" limitation if he or she is frequently ill as a result of his or her impairments or exhibits frequent worsening of symptoms resulting in medically-documented exacerbations.  *Id.* § 416.926a(e)(2)(iv).  "Frequent" means episodes that occur on average every four months and last two weeks or more, or that occur more often than three times a year

but last less than two weeks, or that occur less often but are of overall equivalent severity. *Id.*

An "extreme" limitation, on the other hand, results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An "extreme" limitation is one that is "more than marked." *Id.* The ALJ will determine a limitation to be "extreme" when a comprehensive standardized test designed to measure functioning in a particular domain results in a score of three or more standard deviations below the mean and day-to-day functioning consistent with that score. *Id.* § 416.926a(e)(3)(iii). In the domain of "health and well-being," for example, the ALJ will consider a child to have an "extreme" limitation if the child is frequently ill or if impairments frequently become exacerbated, resulting in medically documented symptoms significantly more than those of a "marked" limitation. *Id.* § 416.926a(e)(3)(iv).

## II. THE HEARINGS

Candelaria first appeared before the ALJ on June 23, 2017, but before the hearing actually began she asked "to get . . . representation." *Id.* at 206-07. The ALJ said that she "probably should've gotten somebody by now" but that she "get[s] one free bite at that apple." *Id.* at 207. So the ALJ postponed the hearing and warned Candelaria that "the next time that we schedule you will have [] already had your free bite and we'll go forward with the case . . . whether or not you have a representative." *Id.*

On August 25, 2017, Candelaria appeared with her attorney. When that hearing began, Candelaria's attorney informed the ALJ that they were "still waiting on some

5

medical evidence which was recently requested." *Id.* at 217. He explained that he had not informed the ALJ about that earlier because he was only "recently retained by this client and [was] just trying to make the record whole." *Id.* Referring to 20 C.F.R. § 416.1435, the ALJ responded that "since that doesn't fit in any of the exceptions, whatever comes in [later] will not be considered for this case." *Id.*

In his written decision, the ALJ tried to justify his decision to exclude the evidence. He noted that a claimant "must submit[] or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing." *Id.* at 21. Under 20 C.F.R. § 416.1435(b), if a claimant misses that deadline but submits or informs the ALJ about written evidence before the hearing decision is issued, the ALJ will accept the evidence if one of the enumerated exceptions is met. Here, the ALJ "decline[d] to admit this [late] evidence because the requirements of 20 CFR § 416.1435(b) are not met" even though "[t]he claimant's representative stated that his firm had been recently retained by the claimant and had requested the evidence to make the record whole." *Id.* at 21-22.

## III. THE ALJ'S DECISION

The ALJ determined that J.L.G.L. was born on May 31, 2006, and therefore was school-aged when the application was filed on February 24, 2015. Docket Item 8 at 24. At step one, the ALJ found that J.L.G.L. had not engaged in substantial gainful activity since the application date. *Id.* at 25. At step two, the ALJ found that J.L.G.L. suffered from two severe impairments: "learning disorder and speech and language disorder." *Id.* Although the ALJ found these impairments to be severe, at step three he determined that J.L.G.L. did not have an impairment or combination of impairments that

6

met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ considered J.L.G.L.'s speech and language disorder and found that it did not meet any of the listings under 102.00 (special senses and speech). Docket Item 8 at 25. The ALJ also considered Listing 112.11 (neurodevelopmental disorders) and determined that J.L.G.L. did not meet that listing because he did not have an extreme limitation in one, or a marked limitation in two, of the following areas of mental functioning: "(1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself." *Id.*

As required by 20 C.F.R. § 416.924a(a) and SSR 09-2p, the ALJ considered all relevant evidence in the case record—including objective medical evidence, J.L.G.L.'s statements, and information from other sources such as J.L.G.L.'s teachers and family members—in reaching his determination. Docket Item 8 at 25. The ALJ also explicitly considered the "whole child," as required by 20 C.F.R. § 416.924a(b) and (c) and explained in SSR 09-1p. Docket Item 8 at 25. In doing so, the ALJ evaluated J.L.G.L.'s abilities compared to other children his age without impairments, as well as the interactive and cumulative effects of all J.L.G.L.'s impairments, severe or otherwise. *Id.* Finally, the ALJ considered "the type, extent, and frequency of help the claimant needs to function." *Id.*

In addressing J.L.G.L.'s symptoms, the ALJ followed a two-step process to evaluate whether (1) there is an underlying medically determinable physical or mental impairment that could be expected to produce his symptoms and (2) the intensity, persistence, and limiting effects of his symptoms, and the extent to which they interfere

7

with his functioning.  Docket Item 8 at 25.  As part of his analysis, the ALJ addressed J.L.G.L.'s abilities in each of the six domains and found a marked limitation in the domain of acquiring and using information, less-than-marked limitations in the domains of attending and completing tasks and interacting and relating with others, and no limitations in the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being.  *Id.* at 28-33.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles."  *Johnson*, 817 F.2d at 986.

**DISCUSSION**

**I.     ALLEGATIONS**

Candelaria objects to the ALJ's failure to develop the record and his rejection of evidence about which he was not informed before the hearing. Docket Item 11-1 at 11. She specifically argues that the ALJ erred by rejecting evidence that might have shown that J.L.G.L. met a listed impairment. *Id.* at 16. And she also argues that the ALJ erred in finding that J.L.G.L.'s arteriovenous malformation was not a severe impairment because it did not persist for twelve months. *Id.* at 17.

**II.    ANALYSIS**

Under 20 C.F.R. § 416.1435(a), the claimant must "inform [the Commissioner] about or submit any written evidence" of disability "no later than 5 business days before the date of the scheduled hearing." *Id.* (emphasis added). If the claimant does not comply with this five-day rule, the ALJ "may decline to consider or obtain the evidence" unless certain circumstances apply.[1]  20 C.F.R. § 416.1435(a)-(b). One of those

---

[1] The full text of 20 C.F.R. § 416.1435(a)-(b) is

(a) When you submit your request for hearing, you should also submit information or evidence as required by § 416.912 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 416.912, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence unless the circumstances described in paragraph (b) of this section apply.

(b) If you have evidence required under § 416.912 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:

circumstances is when some "unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier," such as when the claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." 20 C.F.R. § 416.1435(b)(3)(iv).

Here, Candelaria retained counsel less than a month before her rescheduled hearing. *See* Docket Item 8 at 290. As her attorney explained at the hearing, he requested the medical evidence at issue between the time he was retained and the hearing date. *Id.* at 217. By promptly requesting necessary records, counsel acted "actively and diligently" within the meaning of 20 C.F.R. § 416.1435(b)(3)(iv). Indeed, it is difficult to imagine what else he could have done short of telling the ALJ about the issue and requesting an adjournment that the ALJ had announced would not be given. Docket Item 8 at 207 ("the next time that we schedule . . . we'll go forward with the case . . . whether or not you have a representative.").

---

(1) Our action misled you;
(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
  (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
  (ii) There was a death or serious illness in your immediate family;
  (iii) Important records were destroyed or damaged by fire or other accidental cause; or
  (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

10

"[T]he Social Security Act [is] 'a remedial statute, to be broadly construed and liberally applied.'" *Acierno v. Barnhart*, 475 F.3d 77, 81 (2d Cir. 2007) (quoting *Haberman v. Finch*, 418 F.2d 664, 667 (2d Cir. 1969)). In fact, in the Social Security Administration's review of comments on the proposed rule later codified at 20 C.F.R. § 416.1435, it addressed the issue of incompetent counsel by noting that "[i]f a new representative can show that a prior representative did not adequately uphold his or her duty to the claimant, we expect that our adjudicators would find that this would warrant an exception to the 5-day requirement." Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987-01 (Dec. 16, 2016). Surely the same should be true when a claimant proceeds pro se and then retains counsel. *See id.* ("The fact that a claimant is homeless or lacks representation . . . may result in circumstances that warrant an exception to the 5-day requirement."). Because Candelaria retained counsel only weeks before her scheduled hearing, her attorney's prompt request for records justified an exception to the five-business-day rule. 20 C.F.R. § 416.1435(b)(3).

What is more, the regulation at issue provides that the ALJ "**may** decline to consider" late evidence, 20 C.F.R. § 416.1435(a) (emphasis added), giving the ALJ some discretion in this regard. When a claimant is unrepresented but retains counsel shortly before the hearing, and when counsel promptly requests relevant records, it is an abuse of that discretion to refuse to consider those records. *Cf. United States v. Burkhalter*, 735 F.2d 1327 (11th Cir. 1984) (holding that "order excluding evidence" that

11

prosecutors learned of only on the eve of trial "constitutes an abuse of discretion"). And that is especially so given the beneficent purposes of the Act.[2]

Finally, even if all that were not true, the ALJ still would have erred in refusing to consider the records at issue. An ALJ has an "affirmative duty to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Indeed, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). In light of that duty, an ALJ's conclusion that an impairment is not expected to last twelve months—based on the absence of evidence when he chose to exclude further evidence of that impairment—is not supported by substantial evidence. *See Gladle v. Colvin*, 2013 WL 5503687, at *6-7 (N.D.N.Y. Sept. 30, 2013) ("Claimant's failure to produce evidence of the duration of his impairment is not a sufficient basis for denying his claim in the absence of evidence that attempts to further develop the record would be or had been futile.").

Here, the ALJ found that the medical evidence before him was insufficient to "indicate that [the claimant's aneurysm] is expected to last more than 12 months" and

---

[2] If Candelaria or her counsel had informed the ALJ of the evidence five business days before the hearing, the ALJ would have been required to consider it. *See Drogo v. Comm'r of Soc. Sec.*, 2019 WL 2569599, at *4 (W.D.N.Y. June 21, 2019). Candelaria argues that did not happen here because of a "clerical error" owing to the fact that "the case was so new" to her attorney's office. Under these circumstances, that error was excusable. *Cf. Howe v. Colvin*, 147 F. Supp. 3d 5, 7-8 (D. R.I. 2015) (holding that evaluating a disability claim without "a highly relevant document . . . would violate the tenets [sic] of the Social Security Act, raise form over substance, and be an abuse of discretion" because "an innocent clerical error like this is an 'unusual or unexpected' circumstance beyond Ms. Howe's control as contemplated in the regulation"). And that is still another reason why the refusal to consider the evidence here requires remand.

12

that the aneurysm therefore was nonsevere. Docket Item 8 at 25. But a treatment note, to which the ALJ referred in his decision, indicated the claimant's "[h]istory of [arteriovenous] malformation," *id.* at 685, and that "the claimant was scheduled for an embolization procedure in early August 2017," *id.* at 25. The results of that test, *id.* at 110, were among the evidence the ALJ excluded. In other words, evidence **in the record** indicated that there was **other evidence** that might be relevant to the ALJ's conclusion. In light of that reference in the record, and given the ALJ's duty to develop the record, the ALJ erred in refusing to consider the evidence that the attorney had requested but not yet received by the hearing date.

Other evidence that the ALJ excluded also may have demonstrated that J.L.G.L. was disabled. For example, the ALJ excluded evidence that J.L.G.L. had a full-scale IQ score of 70. *Id.* at 169. With such a score, J.L.G.L. met the first prong of Listing 112.05(B)—and may well have met the second prong, too—but the ALJ did not even consider that listing. *Id.* at 25.[3]

---

[3] The full text of Listing 112.05 is:

112.05 Intellectual disorder (see 112.00B4), for children age 3 to attainment of age 18, satisfied by A or B:
    A. Satisfied by 1 and 2 (see 112.00H):
        1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
        2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.
    OR
    B. Satisfied by 1 and 2 (see 112.00H):
        1. Significantly subaverage general intellectual functioning evidenced by a or b:
            a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

The ALJ relied on the lack of evidence before him to conclude that J.L.G.L. was not disabled, *see* Docket Item 8 at 25, but evidence before him pointed to other relevant evidence that might contradict that finding. The ALJ therefore abused his discretion by not developing the record, as well as by excluding evidence under the five-business-day rule. Therefore, this case is remanded for the ALJ to consider J.L.G.L.'s claim in light of all the relevant evidence.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 19, is DENIED, and Candelaria's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: August 30, 2019
Buffalo, New York

    *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

    b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
    a. Understand, remember, or apply information (see 112.00E1); or
    b. Interact with others (see 112.00E2); or
    c. Concentrate, persist, or maintain pace (see 112.00E3); or
    d. Adapt or manage oneself (see 112.00E4).